IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD VICTOR TAYAG,<br><br>    Petitioner,<br><br>    v.<br><br>A. P. KANE, Warden,<br><br>    Respondent. | No. C 05-4680 CRB (PR)<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

Petitioner was convicted of first degree residential burglary by a jury in Alameda County Superior Court. On May 2, 2002, he was sentenced to 13 years in state prison.

Petitioner appealed his conviction on the grounds that his requests for a trial continuance and for the opportunity to testify on his own behalf were improperly denied, and that the prosecutor engaged in prosecutorial misconduct. On October 27, 2003, the California Court of Appeal affirmed the conviction and, on January 14, 2004, the California Supreme Court denied review.

On September 22, 2004, Petitioner unsuccessfully sought habeas relief from the Alameda County Superior Court based on a claim of ineffective assistance of counsel. On October 10, 2004, the California Court of Appeal affirmed and, on October 12, 2005, the California Supreme Court denied review.

//

On November 15, 2005, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 with this Court. Per order filed on March 6, 2006, this Court found that Petitioner's claims of ineffective assistance of counsel, improper denial of a trial continuance and of the right to testify, and prosecutorial misconduct, appeared colorable under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer to the order to show cause and Petitioner has filed a traverse.

## STATEMENT OF FACTS

The California Court of Appeal summarized the facts of the case as follows:

> Raymond Techaira was at home in a residential area of Livermore around 11 a.m. on January 21, 2002. The house has an attached garage, separated by a laundry room. The garage's double bay door was up because Techaira's wife had recently driven away. When Techaira walked from inside the house to the garage, he found a stranger inside the garage who was later identified as appellant. Appellant was holding Techaira's tool pouch, containing a level, and also holding the keys to Techaira's motor home, which bore a tag labeled "motor home." Techaira stores the tool pouch and keys in the garage.
>
> Techaira was shocked to find appellant in his garage, and asked him: "What are you doing here?" Appellant replied: "I'm here to work for Joe." Techaira said: "No Joe lives here," and told appellant that "those are my things in your hand." Appellant replied: "Well, that's why I'm not, you know, running." Techaira told appellant: "Well, you need to give those back," and reached for the items. Appellant gave Techaira the items and Techaira set them on the garage bench. Techaira told appellant: "You need to leave." Techaira walked appellant out of the garage and watched him walk away from the house.
>
> Techaira went to his motor home that was parked around the corner, and drove it to the front of his house to park it there. As Techaira parked the motor home, he saw that appellant was just a block away and walking back in the direction of Techaira's house. Techaira thought appellant was "up to no good," so he went inside and telephoned the police. Techaira told the police that he had caught a man in the garage, and provided a physical description.
>
> The police located appellant walking in the neighborhood and detained him. Officer Mike Trudeau told appellant that he was investigating a possible burglary and asked appellant for identification. Appellant produced an identification card, and the officer asked him what he was doing in the area. Appellant said his car was broken down at a nearby Chevron station and he was looking for the auto parts store. The closest auto parts store is a two-hour walk from where appellant was found, and a Wal-Mart store, which carries auto parts, is 45 minutes away. Officer Trudeau told appellant that there was no auto parts store in the area and again asked appellant why he was in the area. Appellant "kind of changed directions and said he was looking for his friend Joe." The officer asked appellant "where Joe lived, if he knew the address, and what Joe's last name was." Appellant replied that "he didn't know Joe that well and he didn't know where he lived or what his last name was. And he couldn't describe the house, either." The officer handcuffed

appellant, and Techaira was brought to the scene and identified appellant as the man who entered his garage.

Appellant was arrested, and a search of his person revealed a wallet with $42 in cash and a set of Dodge car keys. Another police officer went to the Chevron station identified by appellant and located appellant's car there. Appellant's keys fit the car's ignition, but the car would not start. Meanwhile, appellant was transported to jail and interrogated there after being advised of his constitutional rights.

Appellant provided the following statement to the police: "'On January 21, 2002, at about 10:00 a.m., a friend of a friend gave me a ride to Livermore from Stockton. I think the guy's name was Tom or something like that. [P] Tom dropped me off at the Chevron station on Vasco Road because my car had broken down there on January 18th, 2002. I was going to the Chevron station to attempt to fix the car. [P] I tried to start the car, so I was going to the Kragen auto parts store in Livermore. I needed to get a new starter for my car. [P] It was a long walk, so I decided to look for a ride. I knew a guy named Joe who lived in the area, so I went looking for his house. I don't known Joe's last name or exactly where he lived, but I started looking for his house. [P] As I was walking, I saw a house that I thought was Joe's house, and the garage door was open, so I walked into the garage. [P] . . . [P] I went inside the garage and knocked on the garage door. Nobody answered when I knocked on the garage door. [P] I saw a tool belt hanging on a rack, so I grabbed it and put it over my shoulder. Sometimes I work for Joe, and I know he would have given me a ride to Kragen if I did some work with him for a while. [P] I stood in the garage and waited for Joe to come out of the house. I waited for about 10 minutes. A guy came out of the house, and it was not Joe. I figured I had the wrong house, so I apologized to the guy and handed him back his tool belt. The guy said it was okay and walked me out of the garage. [P] I wanted to find Joe's house, so I continued to check the neighborhood for Joe's house. That was when the police stopped me. [P] To clarify, I did not knock on the front door to the house that I thought was Joe's house.'"

The parties stipulated that appellant is the person Techaira found inside his garage, and arrested by Officer Trudeau. The defense rested on the state of the evidence.

People v. Tayag, No. A101038, 2003 Cal. App. Unpub. LEXIS 10067, at **1-6 (Cal. Ct. App. Oct. 27, 2003) (alterations in original).

## DISCUSSION

A.   Standard of Review

A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2)

3

resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies that correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable. Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams v. Taylor, 529 U.S. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

B.  Claims & Analysis

Petitioner seeks federal habeas relief under § 2254 on the basis of: (1) ineffective assistance of counsel; (2) improper denial of a trial continuance and the right to testify; and (3) prosecutorial misconduct. This Court will analyze each claim in turn.

//

//

4

1. <u>Ineffective Assistance of Counsel</u>

Petitioner claims he received ineffective assistance of counsel because his lawyer failed to conduct an adequate pretrial investigation. Specifically, Petitioner points to his lawyer's failure to inquire into his drug use history. Petitioner contends that, had his lawyer conducted an adequate pretrial investigation, she would have learned about Petitioner's severe drug abuse history and the fact that he was voluntarily intoxicated with methamphetamine during the commission of the crime for which he was convicted. Petitioner argues that such evidence could have been introduced at trial to negate the "intent" element of his first degree burglary conviction.

In order to prevail on an ineffective assistance of counsel claim, Petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. <u>Strickland v. Washington</u>, 466 US 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, ie, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. <u>Id.</u>

Under California law, evidence of voluntary intoxication may not be admitted to negate the capacity to form a required specific intent for a charged crime; evidence of voluntary intoxication is admissible solely on the issue of whether a defendant actually formed a required specific intent. Cal. Pen. Code § 22(a); <u>People v. Horton</u>, 11 Cal. 4th 1068, 1118-20 (1995). There is no indication that evidence of voluntary intoxication would have been admissible in this case even for the permitted purpose of showing that Petitioner did not form the requisite specific intent, however.

Petitioner has offered no evidence that he was so intoxicated that he could not have formed the required specific intent for first degree residential burglary. Nor is there any evidence in the record even suggesting that Petitioner was so intoxicated that he could not form the specific intent to burglarize a residence. Without any such evidence, there is no

5

1  reasonable probability that the trial court would have given a voluntary intoxication
2  instruction and, much less, that the outcome of Petitioner's trial would have been different.
3  See Horton, 11 Cal. 4th at 1118-20 (explaining that a voluntary intoxication instruction is not
4  warranted when the evidence does not indicate that the defendant's intoxication affected his
5  ability to form the necessary intent); People v. Ramirez, 50 Cal. 3d 1158, 1180-81 (1990)
6  (holding that the trial court did not err in failing to instruct on voluntary intoxication where
7  defendant had drunk approximately ten beers and had testified that he was "high" on the
8  night of the killings, yet none of the phase guilt witnesses had testified that his beer drinking
9  had "any noticeable effect on his mental state or actions").  Petitioner has not shown that
10 there is a reasonable probability that the outcome of his case would have been different had
11 his lawyer inquired into his drug use history and voluntary intoxication on the day of the
12 crime.  See Strickland, 466 U.S. at 693 (petitioner must "affirmatively prove prejudice").
13     The state court's denial of Petitioner's ineffective assistance of counsel claim was not
14 an objectively unreasonable application of Strickland.  See 28 U.S.C. § 2254(d); Williams,
15 529 U.S. at 409.  Petitioner is not entitled to federal habeas relief on this claim.
16     2.     Denial of Trial Continuance and Right to Testify
17     Petitioner claims that the trial court violated his due process right to a fair trial when it
18 denied his request for a continuance so he could prepare to testify.  He further claims that the
19 denial violated his right to testify on his own behalf.
20     The California Court of Appeal explained the factual background for the claims:

> The prosecution presented three witnesses whose testimony concluded in a single day.  On the morning of the second day of jury trial, defense counsel told the court that the defense was not presenting evidence, but intended to simply argue on the state of the evidence, "subject to me talking to my client again this morning."  Defense counsel expressly stated that she was not "asking for any continuances."
>
> However, defense counsel did request a continuance after conferring with appellant.  Defense counsel asked for a continuance to locate witnesses and to prepare appellant to testify.  The court denied the request.  Appellant does not challenge the court's ruling denying a continuance to locate witnesses, but does complain that the court's ruling denying a continuance to prepare for testifying deprived him of his right to testify.

28 Tayag, 2003 Cal. App. Unpub. LEXIS 10067, at *6.

6

It then rejected both claims on the merits:

> The trial court's denial of the requested continuance was not an abuse of discretion, and did not deny appellant his constitutional rights. Continuances shall be granted only upon a showing of good cause. (Pen. Code, § 1050, subd. (e).) "The trial court has broad discretion to grant or deny the request." (People v. Frye (1998) 18 Cal.4th 894, 1012-1013, 959 P.2d 183.) Relevant considerations are the circumstances of the case, the reasons presented for the request, and whether the continuance would be useful. (Id. at p. 1013.) Appellant's case was not complicated. The prosecution presented only three witnesses and their combined testimony lasted less than a day. There were no surprises during the trial that affected the question of whether appellant should testify. That question was posed long before trial commenced, giving defense counsel ample time to prepare appellant to testify. The only reason given for the continuance was appellant's last minute change of tactics. Tactical revisions do not constitute good cause for a continuance. Moreover, appellant has failed to establish the usefulness of his testimony. Appellant's explanation for entering the garage was provided by his police statements, and his testimony would thus have been cumulative. By testifying, appellant also would have exposed himself to impeachment with his prior convictions, which would have swamped any advantage in testifying. (Evid. Code § 788.) The trial court did not abuse its discretion in refusing a continuance.
>
> Nor did the trial court deny appellant his constitutional right to testify in his defense. Rock v. Arkansas (1987) 483 U.S. 44, 52, 56, 97 L. Ed. 2d 37, 107 S. Ct. 2704, upon which appellant relies, invalidated a per se rule prohibiting the admission at trial of any defendant's hypnotically refreshed testimony. The per se exclusion of a defendant's testimony presents a far different situation from the denial of a continuance to prepare to testify, which is the issue here. Rock itself noted that "the right to present relevant testimony is not without limitation." (Id. at p. 55.) One of those limitations is that trials proceed expeditiously, and that any requests for continuances be supported by good cause.

Tayag, 2003 Cal. App. Unpub. LEXIS 10067, at **6-8.

The California Court of Appeal's rejection of Petitioner's two claims was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).

It is well-established that the decision to grant or deny a requested continuance lies within the broad discretion of the trial court, Ungar v. Sarafite, 376 U.S. 575, 589 (1964), and that the improper denial of a requested continuance warrants habeas relief only if there is a showing of actual prejudice to petitioner's defense resulting from the trial court's refusal to grant a continuance, Gallego v. McDaniel, 124 F.3d 1065, 1072 (9th Cir. 1997). Here, it cannot be said that the trial court abused its discretion in denying Petitioner's request for a continuance on the second day of trial – Petitioner's only reason for seeking a continuance at

7

1  that late date was a last-minute desire to change tactic and testify, and, even then, he could
2  not establish the usefulness of his proffered testimony.  Nor can it be said that Petitioner was
3  prejudiced from the denial of a continuance – there is no indication that his testimony would
4  not have added much to the record.  See Gallego, 124 F.3d at 1072.

The right to testify on one's own behalf in a criminal trial is one of the rights that are essential to due process of law in a fair adversary process.  Rock v. Arkansas, 483 U.S. 44, 51 (1987).  The right is not without limitation, however.  Id. at 55.  It may, in appropriate cases, "bow to accommodate other legitimate interests in the criminal trial process," so long as such restrictions on the right to testify are not "arbitrary or disproportionate to the purposes they are designed to serve."  Id. at 55-56.  Here, it cannot be said that the denial of a continuance to allow Petitioner time to prepare and testify was unjustified.  The request came way too late in the proceedings and the proffered testimony was never shown to be anything more than cumulative.  The California Court of Appeal reasonably concluded that, under the rationale of Rock, the trial court's denial of a continuance did not violate Petitioner's right to testify in his defense.  See 28 U.S.C. § 2254.[1]

Petitioner is not entitled to federal habeas relief on his claims of improper denial of a trial continuance and of his right to testify.

### 3. Prosecutorial Misconduct

Petitioner claims the prosecutor engaged in misconduct by making several improper remarks during closing argument.  Petitioner specifically cites the prosecutor's: (1) misstatement of testimony in connection with his argument that "Joe" did not exist; (2) "vouching" for Officer Trudeau's testimony; and (3) discrediting defense counsel's alternate theories of the case.

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair."  Darden v Wainwright, 477 U.S. 168, 181 (1986); see Smith v

---

[1] It should be noted that the trial court did not actually deny Petitioner an opportunity to testify on his own behalf – it merely denied his request to prolong a decision that could, and should, have been made in advance of trial.  Petitioner could have testified on that second and final day of trial, but did not.

8

1  Phillips, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of
2  alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the
3  prosecutor."). To warrant habeas relief on the basis of a prosecutorial misconduct, the
4  misconduct must have amounted to a violation of due process and have had a substantial and
5  injurious effect or influence in determining the jury's verdict. See Johnson v. Sublett, 63
6  F.3d 926, 930 (9th Cir. 1995) (citing Brecht v Abrahamson, 507 U.S. 619, 637 (1993)).

   Petitioner first takes issue with the prosecutor's remarks in connection with his suggestion that "Joe," who Petitioner claimed he was looking for when he entered the garage, did not exist. The record shows that in making the argument that Joe did not exist, the prosecutor paraphrased the testimony of one of his witnesses, Officer Trudeau, as, "hey, give me some more information about [Joe]. Tell me where the house is. Tell me what the house looks like. Tell me what he looks like, what kind of work, anything." Tayag, 2003 Cal. App. Unpub. LEXIS 10067, at *10. The prosecutor then posed to the jury a series of rhetorical questions – "How do you go look for a house without a description, without a street, without an address?" – followed by a statement that "[t]his [Joe] was a tailor made excuse by the defendant if he were caught." Rep. Tr. at 468:6-13. Petitioner argues that the prosecutor exaggerated Trudeau's testimony and implied that the prosecutor knew undisclosed information.

   The California Court of Appeal determined that the prosecutor did not "act impermissibly in his closing, rebuttal argument to the jury in which he argued that 'Joe' . . . did not exist." Tayag, 2003 Cal. App. Unpub. LEXIS 10067, at *9. The court noted that while "the prosecutor did not unerringly recite the officer's testimony verbatim, the substance of the testimony was properly characterized." Id. at *10. The state appellate court's determination was not objectively unreasonable. See 28 U.S.C. § 2254(d); see also United States v. Parker, 241 F.3d 1114, 1119-20 (9th Cir. 2001) (concluding that prosecutor's minor misstatement did not require reversal where other evidence pointing to guilt made misstatement not central to the case).

9

Petitioner next claims that the prosecutor improperly vouched for the credibility Officer Trudeau. The record shows that the prosecutor accused defense counsel of suggesting that Trudeau was lying, and dismissed the accusation as "absurd" because the officer would be "violating his duties" and "risking his career" over a burglary. Rep. Tr. at 410:16.

The California Court of Appeal acknowledged the impropriety of prosecutorial comments that an officer would not put his career at risk by lying. Tayag, 2003 Cal. App. Unpub. LEXIS 10067, at *12. After all, it is well-established that a prosecutor may not vouch for the credibility of a witness by placing the prestige of the government behind the witness through personal assurances of the witness's veracity. See Parker, 241 F.3d at 1119-20. The court nonetheless denied the claim because it found "no reasonable probability that appellant was prejudiced by the prosecutor's argument." Tayag, 2003 Cal. App. Unpub. LEXIS 10067, at *12. The state court's determination was not objectively unreasonable. See 28 U.S.C. § 2254(d). In view of the overall evidence before the jury, it cannot be said that the prosecutor's vouching had a substantial and injurious effect or influence in determining the jury's verdict. See Brecht, 507 U.S. at 637; Johnson, 63 F.3d at 930.

Petitioner finally claims that the prosecutor improperly argued to the jury that defense counsel's alternate theories of the case were weak – specifically, that the defense was "trying to throw a lot of things out to the jurors, hoping that somebody will buy or bite some of this stuff."

The California Court of Appeal determined that the prosecutor's remarks were "proper argument to the jury" because they were directed to the evidence and theories presented by defense counsel, and not to the integrity of defense counsel. Tayag, 2003 Cal. App. Unpub. LEXIS 10067, at *11. The state court's determination was not objectively unreasonable. See 28 U.S.C. § 2254(d); cf. United States v. Necoechea, 986 F.2d 1273, 1277-81 (9th Cir. 1993) (finding statements in closing argument do not constitute vouching if focused on inferences that can be drawn from evidence in the record and do not imply that the government is assuring a witness's veracity).

Petitioner is not entitled to habeas relief on his prosecutorial misconduct claims.

## CONCLUSION

For the foregoing reasons, this Court is satisfied that the petition for a writ of habeas corpus must be DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: March 30, 2007

CHARLES R. BREYER
United States District Judge

G:\CRBEX3\Alvarez\Tayag order (revised).wpd 11